FILED

MAY 19 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN PRESIDENT LINES, LTD., <br><br> Plaintiff - Appellant, <br><br> v. <br><br> INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, ALASKA LONGSHORE DIVISION, UNIT 60, <br><br> Defendant - Appellee. | No. 14-35200 <br><br> D.C. No. 3:10-cv-00183-JWS <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted March 3, 2015
Pasadena, California

Before: TASHIMA, TALLMAN, and N.R. SMITH, Circuit Judges.

This case returns to us on appeal after our previous holding that American

President Lines, Ltd. ("APL") has standing under Section 303 of the Labor

Management Relations Act ("LMRA") to pursue an action in federal court against the

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

International Longshore and Warehouse Union, Alaska Longshore Division, Unit 60 ("ILWU") for the Union's alleged commission of unfair labor practices through its conduct in arbitration proceedings.[1] *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union, Alaska Longshore Div., Unit 60*, 721 F.3d 1147 (9th Cir. 2013). Subsequent to our remand order, the Union filed a motion for summary judgment. The district court looked to the sworn testimony from the arbitration hearing and granted summary judgment in favor of the ILWU on both of APL's unfair labor practice charges—violation of Sections 8(b)(4)(ii)(A) and (B) of the National Labor Relations Act ("NLRA").[2] APL appeals, arguing that the district court erred in

---

[1]Section 303 of the LMRA provides:
(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.
(b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section may sue therefor in any district court of the United States . . . , or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.
29 U.S.C. § 187.

[2]Section 8(b)(4)(ii) of the NLRA provides that it shall be an unfair labor practice for a union to:
threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is–
(A) forcing or requiring any employer or self-employed person to join

(continued...)

concluding no genuine issues of material fact existed with respect to two factors key to the ILWU's ability to defend against APL's unfair labor practice claims: (1) whether the disputed work is "fairly claimable" by the ILWU; and (2) whether APL has the "right to control" the disputed work. APL also argues that the district court erred in granting summary judgment because the ILWU obtained an interpretation of the parties' collective bargaining agreement that created an unlawful union signatory agreement—also known as a "hot cargo" agreement—in violation of Section 8(e) of the NLRA.[3] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[2](...continued)
any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section; (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees . . . .

29 U.S.C. § 158(b)(4)(ii).

[3]Section 8(e) provides that:
It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to . . . cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void . . . .

29 U.S.C. § 158(e).

An alleged violation of Section 8(b)(4)(ii)(A) "necessarily rises or falls" on a violation of Section 8(e). *Nelson v. Int'l Bhd. of Elec. Workers, Local Union No. 46*, 899 F.2d 1557, 1561 n.3 (9th Cir. 1990), *rev'd on other grounds*, *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 455 (9th Cir. 1994) (en banc). In addition, a union's efforts to enforce—through arbitration—a clause that violates Section 8(e) may constitute not only a violation of Section 8(b)(4)(ii)(A), but also a violation of Section 8(b)(4)(ii)(B). *See NLRB v. Hotel & Rest. Emps. & Bartenders' Union Local 531*, 623 F.2d 61, 65, 68 (9th Cir. 1980) (holding that a union's threat to strike in order to obtain a provision in a collective bargaining agreement that violated Section 8(e) also violated Sections 8(b)(4)(ii)(A) and (B)); *Local 917, Int'l Bhd. of Teamsters v. NLRB*, 577 F.3d 70, 74, 78 (2d Cir. 2009) (union's demand for arbitration was made with the object of effectuating a secondary boycott against a neutral employer). In order for a clause to qualify as a lawful work preservation clause that does not violate Section 8(e)'s prohibition on hot cargo agreements, the clause must meet two elements: (1) the clause's objective must be the preservation of work for union members rather than a secondary goal; and (2) the employer must have a "right of control," i.e., the power to assign the work. *NLRB v. Int'l Longshoremen's Ass'n* ("*ILA II*"), 473 U.S. 61, 76 (1985).

Here, the operative collective bargaining agreement—the All Alaska Longshore Agreement ("AALA")—binds the members of the Alaska Maritime Employers Association ("AMEA") and "other Alaska longshore employers separately signatory hereto." As a member of the AMEA, and therefore a signatory to the AALA, APL promised the ILWU: "[T]he Employer hereby assures the Union that it will use its best efforts and act in good faith in preserving as much as possible all of the work covered by this Contract for the registered work force." Among other types of work, the AALA covers stevedoring work, which includes the "movement of cargo on vessels or loading to and discharging from vessels of any type, and on docks, or to and from railroad cars, ferries and barges at docks." In addition, the AALA designates Seward, Alaska as an ILWU Port.

1. Under the first prong of *ILA II*, to determine whether a union seeks a permissible objective, rather than an impermissible secondary objective, we evaluate whether the union's objective is the preservation of work traditionally performed by "bargaining unit" employees. *See NLRB v. Int'l Longshoremen's Ass'n* ("*ILA I*"), 447 U.S. 490, 504 (1980). In the shipping industry, the bargaining unit is comprised of the multiple employers who are signatory to the operative collective bargaining agreement. *See Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n*, 192 F.3d 250, 256–57 (2d Cir. 1999); *Longshoremen ILWU (California Cartage)*, 278

N.L.R.B. 220, 221 (1986), *enforced in relevant part*, 822 F.2d 1203 (D.C. Cir. 1987). In this case, the bargaining unit consists of those employers who are signatory to the AALA—APL, Horizon Lines, Inc., Southeast Stevedoring Corp., and North Star Terminal and Stevedore Co. ("North Star").[4] Because the ILWU historically performed stevedoring work in Seward for North Star, a current signatory to the AALA, the stevedoring work in Seward is fairly claimable by the Union. Thus, the district court properly found no genuine issue of material fact remained on this issue.

2. Even if a union may fairly claim performance of the disputed work through an otherwise valid work preservation clause, the union's efforts to enforce such a clause violates the NLRA if the employer does not have the "right to control" assignment of the work. *NLRB v. Enter. Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Ice Mach. & Gen. Pipefitters of N.Y. & Vicinity, Local Union No. 638* ("*Pipefitters*"), 429 U.S. 507 (1977). The NLRB has previously held: "The containers are owned or leased by the steamship companies. Those companies control the use of the containers." *California Cartage*, 278 N.L.R.B. at 223.

---

[4]Contrary to APL's assertion, there is no case law that compels a finding that the bargaining unit is limited to members of the AMEA. Further, all of the relevant contractual provisions are contained within the AALA, and are not in an agreement restricted to AMEA employers. Even if the bargaining unit should be limited to the AMEA, this would be of no consequence because North Star was a member of the AMEA during the relevant time period.

Construing the facts in the light most favorable to APL, we hold that the district court properly found that there is no genuine issue of material fact as to whether APL controls the assignment of the disputed Seward stevedoring work.

Gene Makarin, APL's General Manager of Alaska Operations, answered in the affirmative when asked to confirm during the arbitration hearing that he "control[s] where APL's containers go, when they go, how many go, where they go when they get there, and who takes them there[.]" In addition, Makarin's sworn declaration states that "some of [APL's] customers have specifically requested that APL use Samson to export their product, and APL abides by such requests," indicating that APL has a choice in deciding whether or not to employ a connecting carrier who refuses to hire ILWU labor in Seward. To the extent that APL now argues that Samson is the only connecting carrier who operates in Seward, and therefore has monopolistic control over the disputed work, we may not consider this eleventh hour argument raised for the first time on appeal and with no factual support in the record. *See Lopez v. Pac. Mar. Ass'n*, 657 F.3d 762, 766–67 (9th Cir. 2011).

Because there are no contested issues of material fact in the record adduced before the Alaska Arbitrator establishing that the disputed work is fairly claimable, and that APL has the right to control assignment of the disputed work, the clause—as applied to the Seward stevedoring work—is a valid work preservation clause that the

7

Union may seek to enforce. The ILWU did not pursue an impermissible secondary objective when engaging in its arbitration efforts to require APL to honor this clause, and therefore did not violate the NLRA. To the extent the Alaska Arbitrator incorrectly interpreted the ILWU's arbitration efforts as seeking an outcome that would violate the NLRA—such as creating a hot cargo agreement by requiring APL to force Samson into a compliance agreement with the AALA—we must uphold the arbitration award where, as here, there is a permissible interpretation of the award that is not repugnant to the NLRA. *See Douglas Aircraft Co. v. NLRB*, 609 F.2d 352, 354 (9th Cir. 1979); *cf. United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). Indeed, the Alaska Arbitrator explained that there were "several ways" for APL to uphold its commitment to the ILWU, only one of which would result in an interpretation of the clause as an impermissible union signatory clause (i.e., an impermissible hot cargo agreement).

**AFFIRMED.**